# Reimbursement of the Department of Justice for Providing Legal Assistance to the Department of Health and Human Services

The Department of Justice may be legally reimbursed by the Department of Health and Human Services (HHS) for attorney services provided pursuant to the Economy Act, through the employment of additional attorneys in the Office of the United States Attorney, to assist in the defense of HHS against claims filed under the Social Security Act in federal district court.

Attorneys employed in that capacity using HHS funds may not "conduct" litigation, but may only "assist" in litigation, because the Justice Department has the exclusive obligation and authority to conduct litigation on behalf of the United States and HHS has no independent litigation authority.

In order to justify the foregoing arrangements under the Economy Act, HHS must demonstrate that it is more economical or efficient to purchase such services from the Department of Justice than to provide the services itself.

September 3, 1985

MEMORANDUM OPINION FOR THE DIRECTOR,
EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS

## I. Background and Summary

This memorandum responds to your request for our opinion whether the Executive Office for United States Attorneys (EOUSA) has authority to accept reimbursement from the Department of Health and Human Services (HHS) for funds used to employ attorneys in the Office of the United States Attorney for the District of New Jersey to defend Social Security disability claims. As we understand the facts set out in your request, a recently promulgated local rule in the United States District Court for the District of New Jersey regarding procedures to be followed in resolving Social Security disability claims has imposed additional burdens on those who defend against such claims on behalf of the United States Government. HHS has funds available to meet this additional workload but, because of a workyear ceiling, is unable to hire additional employees to aid in the defense of these claims. On the other hand, the United States Attorney for the District of New Jersey has unfunded workyears for attorneys and support positions, but is not in a position to fund the positions. Therefore it is proposed that the EOUSA enter into an agreement with HHS, pursuant to 31 U.S.C. § 1535 (the Economy Act), to furnish HHS attorney and

81

support personnel. HHS would in turn reimburse EOUSA for the personnel service provided.

Our conclusions as to the legality of this arrangement can be summarized as follows. It is proper for the Department to receive payment from HHS pursuant to the Economy Act for attorney services and to use such funds to employ additional attorneys for Social Security disability litigation so long as certain conditions are met. First, HHS must have available funds that HHS itself could use to perform legal work in Social Security disability litigation. Second, the attorneys hired with HHS funds cannot ordinarily "conduct" litigation but only assist in the conduct of litigation, because the Justice Department has the exclusive obligation and authority to conduct litigation on behalf of the United States and HHS has no independent litigation authority. Accordingly, the tasks of the attorneys hired with HHS funds must be limited to those that HHS attorneys could ordinarily perform. Third, HHS must demonstrate that it is more economical or efficient to purchase such personnel services from the Department of Justice than to provide the services itself.

## III. Analysis

### A. Requirement that HHS Have Funds Available

The Economy Act provides:

> The head of an agency or major organizational unit within an agency may place an order with a major organizational unit within the same agency or another agency for goods or services if (1) amounts are available; (2) the head of the ordering agency or unit decides the order is in the best interest of the United States Government; (3) the agency or unit to fill the order is able to provide the ordered goods or services; and (4) the head of the agency decides ordered goods or services cannot be provided as conveniently or cheaply by a commercial enterprise.

31 U.S.C. § 1535(a). The agency ordering the services must reimburse the agency providing the services. *Id.* § 1535(c).

The first requisite of the Economy Act is that the agency purchasing the service have "amounts ... available" for their purchase. In this case, the requirement means that HHS must have funds that it could use to perform legal work in Social Security disability litigation. We state this requirement as a condition because we have not been informed whether HHS has funds which it could use specifically for the legal work in Social Security disability litigation, although we have been informed that HHS generally has funds available. A close review of HHS's appropriation should be undertaken to ascertain the precise limits on the funds with which it proposes to purchase legal personnel services from the Department of Justice.

## B. Restrictions on Attorneys Hired with HHS Funds

The attorneys hired with HHS funds must not perform tasks that are statutorily reserved to the Department of Justice. This limitation is a direct consequence of a longstanding interpretation of the Economy Act. As the Comptroller General recently reiterated: "The Economy Act does not authorize a Federal agency to reimburse another agency for services which the latter is required by law to provide." 61 Comp. Gen. 419, 421 (1982). The interpretation is required in order to prevent agencies from agreeing to reallocate funds between themselves in circumvention of the appropriations process.[1] Therefore, the attorneys hired with HHS funds cannot ordinarily provide services which the Department of Justice is obligated by law to provide.

The Department's exclusive litigation authority is codified in 28 U.S.C. § 516, which reads as follows: "Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency or an officer thereof is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General." A parallel section, 5 U.S.C. § 3106, provides that except as otherwise authorized by law, an executive department "may not employ an attorney . . . for the conduct of litigation in which the United States, an agency, or employee thereof is a party . . . but shall refer the matter to the Department of Justice." HHS seems to have no countervailing grant of authority that would permit it to conduct Social Security disability litigation itself.

Despite the Department's exclusive authority to conduct litigation, substantial assistance is received as a matter of course from the attorneys of an agency involved in a lawsuit. As an opinion of this Office previously recognized: "Depending upon the nature of a case, this Department may call upon agency attorneys not only to provide factual material but also to draft pleadings, briefs and other papers. At times, in conjunction with attorneys of this Department, agency attorneys take part in trials and court proceedings." "Department of Justice — Transfer of Funds from Another Agency — Payment for Attorney Services — Economy Act (31 U.S.C. § 686)," 2 Op. O.L.C. 302, 303 (1978) (footnote omitted). The Department of Justice has officially taken the position that so long as this Department retains control over the conduct of litigation, such cooperation is consistent with 28 U.S.C. § 516 and 5 U.S.C. § 3106. *Id.* Because HHS attorneys are permitted to assist the Department of Justice in the defense of Social Security disability claims, HHS can, pursuant to the Economy Act, provide funds to the Department of Justice to hire attorneys to assist in the defense if HHS has funds available for such legal work. Because the Depart-

---

[1] As the Comptroller General has stated:

A contrary interpretation would compromise the basic integrity of the appropriations process itself. Under the doctrine of separation of powers, Congress, and Congress alone has the "power of the purse." When Congress makes an appropriation, it also establishes an authorized program level. To permit an agency to operate beyond the level that it can finance under its appropriation with funds derived from another source would be a usurpation of the congressional prerogative.

*Id.*

ment of Justice has the exclusive obligation to conduct litigation, the attorneys hired with HHS funds must refrain from exercising operational control over the defense of Social Security disability claims.

We realize that the line between conducting litigation and assisting in the conduct of litigation will be difficult to draw precisely. As a practical matter, the range of assistance that attorneys hired with HHS funds can provide is quite broad. They may draft pleadings, briefs, and other papers, and in conjunction with attorneys hired by the Department of Justice, take part in court proceedings. Attorneys hired with HHS funds, however, may not make final decisions as to the contents of briefs or oral argument. They must be at all times under the supervision of attorneys hired with funds from the appropriation for the Department of Justice. Final responsibility for litigation decisions, both strategic and tactical, must rest with these latter attorneys.

EOUSA has requested that no limitations be imposed on the activities or authority of attorneys hired with HHS funds. In support of this request, EOUSA has submitted certain materials that suggest that HHS attorneys have been exercising *de facto* control over the conduct of Social Security disabilities claims.[2] The Department of Justice, however, has consistently required an explicit congressional authorization or appropriation before it will infer that its exclusive authority has been derogated.[3] None of these materials constitutes such an explicit authorization or appropriation.[4] Therefore, in order to prevent both the circumvention of Congress' power of appropriation and the erosion of this Department's exclusive authority to conduct litigation on behalf of the United States, we continue to maintain that attorneys hired with HHS funds must ordinarily assist rather than actually conduct Social Security disability litigation.

---

[2] EOUSA has provided us with memoranda that suggest that over the years the Department of Justice has conferred increasing authority on HHS attorneys in Social Security disability cases. In addition, EOUSA notes that HHS's budget request for FY 1984 sought appropriations for an additional nine positions to meet increased litigation workloads, including an increase in the number of cases. The increased case workload resulted from several sources, including the Social Security Disability Amendments of 1980.

We have not been asked and we do not opine on the legality of any *de facto* delegation to HHS of litigation authority in Social Security disability cases. We note, however, that in the past it has been the position of the Department of Justice that the law requires attorneys not employed by the Department, including those employed by other agencies in the Executive Branch, to be appointed as special attorneys in the Department before they may conduct litigation for which the Department is responsible. *See generally* 28 U.S.C. §§ 515(a), 543 (authorizing the Attorney General to appoint special attorneys)

[3] *See* Memorandum for Glen E. Pommerening, Assistant Attorney General for Administration from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel 4 (Mar. 15, 1976) ("[T]he Department has consistently interpreted [28 U.S.C. § 516 and 5 U.S.C. § 3106] as requiring the conferral of litigation authority upon an agency other than the Department or the appropriation of funds to contract for such litigation to be specific and explicit.") (footnote omitted).

[4] Even if the Department of Justice memoranda could be construed to suggest that the Department has systematically delegated HHS *de facto* authority over litigation, such informal delegation, unratified by Congress, does not limit the Department's statutory mandate. Even if it were possible to infer from HHS's FY 1984 budget request that HHS was asking for an appropriation to control the defense of Social Security disability cases, HHS's request does not represent the explicit congressional authorization or appropriation that the Department of Justice itself has required before it will yield its exclusive authority and obligation to conduct litigation on behalf of the Unite States. We have been unable to find any legislative history suggesting that Congress viewed its FY 1984 appropriation to HHS as changing the traditional relationship of the Department to other agencies in litigation matters.

## C. Requirement that HHS Make Efficient Use of Funds

The purpose of the Economy Act is to promote efficiency and economy in government. Therefore, in order to justify invocation of the Act, it must be demonstrated that HHS's use of its funds to hire Department of Justice attorneys to assist in the defense of Social Security claims is more efficient than HHS's use of the funds to provide such services itself.

As we understand the facts, HHS has reached its employment ceiling. Accordingly, HHS is unable to hire more attorneys to assist in Social Security disability litigation. Assuming that the addition of attorneys is seen as the most efficient use of HHS's resources in response to the new rules governing Social Security disability cases in the United States District Court for the District of New Jersey, the hiring of Department of Justice attorneys seems justified as HHS's most efficient course of action in view of HHS's employment ceiling.[5] Thus, on the basis of the facts related to us, we believe that HHS's use of funds to hire Department of Justice attorneys to provide litigation assistance does comport with the purposes of the Economy Act.

We conclude that so long as HHS has funds available for legal work on Social Security disability litigation, HHS may use these funds to reimburse the Department of Justice for hiring additional attorneys to assist in the conduct of Social Security disability litigation, subject to the other considerations and requirements discussed in this memorandum.

RALPH W. TARR
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[5] We assume in this analysis that the employment ceiling preventing HHS from hiring additional attorneys has been established by the Office of Management and Budget. *See* OMB Circular No. A-64 (1980). If the employment ceiling was set by Congress, it is possible that the arrangement between HHS and EOUSA could be seen to contravene Congress' intent in establishing that ceiling.